IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY ZIELINSKI | : | CIVIL ACTION |
| | : | NO. 15-3053 |
| v. | : | |
| | : | |
| KIMBERLY-CLARK CORPORATION | : | |

O'NEILL, J.                                                                                    June 28, 2016

## MEMORANDUM

Plaintiff Mary Zielinski has sued defendant Kimberly-Clark Corporation[1] alleging

employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e,

et seq., the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq., and the Americans

with Disabilities Act, 42 U.S.C. § 12101, et seq.  Dkt. No. 7 at ECF p. 1.  Now before me is

defendant's motion to dismiss plaintiff's amended complaint (Dkt. No. 11), plaintiff's response

(Dkt. No. 13) and defendant's reply (Dkt. No. 14).  For the reasons that follow, I will grant in

part and deny in part defendant's motion.

Zielinski has been an employee of Kimberly-Clark for over forty years.  Dkt. No. 7 at ¶ 2.

She alleges that she is a member of several protected classes because she was 59 years old at the

time she filed her complaint, is female and has a disability which has required her to take

numerous medical leaves from work to address.  Id. at ¶¶ 2-4, 36, 40.  Plaintiff alleges that from

2011 onward, defendant has subjected her to:

---

[1]      Defendant avers that plaintiff has sued the wrong company and that the proper
defendant is Kimberly-Clark Pennsylvania, LLC rather than Kimberly-Clark Corporation.  Dkt.
No. 11 at ECF p. 3 n.1.  Plaintiff responds that defendant has never disputed that it is plaintiff's
employer throughout the EEOC agency process and that defendant provides no support for its
contention.  Dkt. No. 13 at ECF p. 5 n.1.  Plaintiff also maintains that her pay stubs list
Kimberly-Clark Corporation rather than Kimberly-Clark Pennsylvania, LLC as her employer.
Id.  I cannot find that Kimberly-Clark Corporation is an improper defendant in this case based on
defendant's unsupported assertion in a footnote in its brief.

> a continuous and ongoing hostile work environment based upon
> her age, gender and disability, which included, without limitation:
> stripping Plaintiff of her reports; demoting Plaintiff, not placing
> Plaintiff into open positions which she applied and was qualified
> for; attempting to persuade Plaintiff to withdraw her application
> for an open position in order to "get some new folks in . . ."[;]
> providing Plaintiff with unfounded performance criticism; issuing
> Plaintiff unsubstantiated negative performance reviews; making
> discriminatory comments, including comments made by Plaintiff's
> direct supervisors and other upper-level managers at Defendant,
> which evidence Defendant[']s age-, gender- and disability-based
> bias; and issuing Plaintiff an unfounded Performance Improvement
> Plan . . . .

Id. at ¶ 28.

Plaintiff brings disparate treatment and hostile work environment claims against

defendant under Title VII, the ADEA and the ADA.  See id. at ¶¶ 98-115.  Her disparate

treatment claims are based on allegations regarding two negative performance evaluations and

being placed on a performance improvement plan.[2]  See id. at ¶¶ 62-73.  Plaintiff's hostile work

environment claims rely on numerous allegedly discriminatory comments and other actions

taken by her supervisors and employees at defendant since 2011.[3]  See id. at ¶¶ 22-87.

Defendant has moved to dismiss all of plaintiff's claims.  Dkt. No. 11 at ECF p. 2.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action

for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

---

[2]       Defendant argues that any discriminatory acts that occurred before November 7,
2013 — 300 days before plaintiff alleges that she filed her EEOC charge — are untimely and
cannot support her disparate treatment claims. Dkt. No. 11 at ECF p. 5. Defendant identifies
three alleged acts of disparate treatment after November 7, 2013. Id. Plaintiff cites the same
three instances that defendant identifies as the basis for her disparate treatment claims. Dkt. No.
13 at ECF p. 11.

[3]       Plaintiff's age-, sex- and disability-specific allegations are discussed in greater
detail below.

2

Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief

"requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "Factual

allegations must be enough to raise a right to relief above the speculative level . . . on the

assumption that all of the allegations in the complaint are true (even if doubtful in fact)."  Id.

(citations omitted).  This "simply calls for enough fact[s] to raise a reasonable expectation that

discovery will reveal evidence of" the necessary element.  Id. at 556.  The Court of Appeals has

made clear that after Ashcroft v. Iqbal, 556 U.S. 662 (2009), "conclusory or 'bare-bones'

allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice.'  To prevent dismissal,

all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially

plausible."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 556

U.S. at 678.  The Court also set forth a two part-analysis for reviewing motions to dismiss in

light of Twombly and Iqbal:

> First, the factual and legal elements of a claim should be separated.
> The District Court must accept all of the complaint's well-pleaded
> facts as true, but may disregard any legal conclusions.  Second, a
> District Court must then determine whether the facts alleged in the
> complaint are sufficient to show that the plaintiff has a "plausible
> claim for relief."

Id. at 210-11, quoting Iqbal, 556 U.S. at 679.  The Court explained, "a complaint must do more

than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement

with its facts."  Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679, quoting Fed. R. Civ. P. 8(a)(2).

**DISCUSSION**

### I.      Disparate Treatment

Plaintiff alleges that defendant subjected her to disparate treatment in violation of Title VII, the ADEA and the ADA.  Defendant argues that plaintiff's disparate treatment claims should be dismissed because she has failed to identify any timely adverse employment actions taken against her and because the facts she pleads do not raise an inference of discriminatory motive.

To state a prima facie case of discrimination under Title VII, plaintiff must allege that: 1) she is a member of a protected class; 2) she was qualified for the position she held; 3) she suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Under the ADEA, plaintiff must allege that she: 1) is 40 years of age or older; 2) was subjected to an adverse employment action; 3) was qualified for her position; and 4) was treated less favorably than a sufficiently younger person under circumstances giving rise to an inference of age discrimination.  See Smith v. City of Allentown, 589 F.3d 684, 689 (3d Cir. 2009); Fallon v. Meissner, 66 F. App'x 348, 351 (3d Cir. 2003).  Finally, under the ADA, plaintiff must allege that she is a qualified individual with a disability and that she suffered an adverse employment action because of that disability.  Turner v. Hershey Chocolate U.S., 440 F.3d 604, 611 (3d Cir. 2006).

### A.      Failure to Exhaust Administrative Remedies

Defendant first argues that plaintiff cannot state a claim for disparate treatment based on

her negative performance evaluation in January 2015 because she failed to exhaust her administrative remedies.  Dkt. No. 11 at ECF p. 7.  Plaintiff filed a charge of discrimination with the EEOC in September 2014, four months before she received a negative evaluation in January 2015.  See Dkt. No. 7 at ¶ 14.  Plaintiff argues that because the 2015 evaluation "forms part of the same core grievances that she pursued in her agency filing, [she] has successfully exhausted her administrative remedies."  Dkt. No. 13 at ECF p. 14.

Defendant maintains that the January 2015 evaluation "was outside the scope of the EEOC proceedings investigating her charge" and that it failed to put defendant "on notice of her claim arising from her 2015 performance evaluation."  Dkt. No. 11 at ECF p. 7 (internal quotation marks omitted).  For support, defendant cites Antol v. Perry, 82 F.3d 1291, 1295-96 (3d Cir. 1996), a case in which the Court of Appeals found that the plaintiff failed to exhaust his administrative remedies for his sex discrimination claim because he never asserted sex discrimination in any administrative proceeding.  Defendant also cites Ford-Greene v. NHS, Inc., 106 F. Supp. 3d 590, 600-01 (E.D. Pa. 2015), where the plaintiff was not permitted to proceed on a hostile work environment claim that he had never included in his charge with the Pennsylvania Human Relations Commission.

Here, in contrast, plaintiff did assert a claim for disability discrimination in her EEOC complaint, although her 2014 filing could not have addressed any incidents in 2015.  Dkt. No. 7 at ¶ 14.  Defendant does not appear to contest that plaintiff's EEOC complaint included her earlier negative evaluation and her placement on a performance improvement plan.  Considering the allegations in plaintiff's complaint, the January 2015 negative evaluation does not appear to be substantially different from plaintiff's earlier negative performance evaluation.  See id. at ¶¶ 62, 72.  Thus, I find that she has plausibly alleged that defendant was "on notice" of her disparate

treatment claims.  As the Court of Appeals observed in Antol, "[r]equiring a new EEOC filing

for each and every discriminatory act would not serve the purposes of the statutory scheme

where the later discriminatory acts fell squarely within the scope of the earlier EEOC complaint

or investigation."  82 F.3d at 1295.  At this stage of the proceedings, plaintiff may rely on this

allegation for her disparate treatment claims.

### B.      Adverse Employment Action

Defendant next contends that plaintiff fails to allege that she suffered an "adverse

employment action" sufficient to state a claim of disparate treatment under Title VII, the ADEA

or the ADA.  Dkt. No. 11 at ECF p. 5-6.  Plaintiff responds that she has alleged several adverse

employment actions in the relevant timeframe — altering the compensation she would have

otherwise received.  Dkt. No. 13 at ECF p. 9-10.

An adverse employment action is "an action by an employer that is 'serious and tangible

enough to alter an employee's compensation, terms, conditions, or privileges of employment.'"

Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004), quoting Cardenas v. Massey,

269 F.3d 251, 263 (3d Cir. 2001).  A plaintiff must plead an adverse employment action as a

prerequisite for disparate treatment liability under the Title VII, ADEA and ADA.  See

McDonnell Douglas, 411 U.S. at 802 (Title VII); Smith, 589 F.3d at 689 (ADEA); Turner, 440

F.3d at 611 (ADA).

Defendant relies on two cases to support its argument.  First, in Cashman v. CNA

Financial Corporation, a plaintiff brought ADA and ADEA claims based in part on a negative

performance review and placement on a performance improvement plan.  No. 08-5102, 2012 WL

113667, at *10-12 (E.D. Pa. Jan. 13, 2012).  The Cashman Court found that the plaintiff could

not establish that an adverse employment action had been taken against him based solely on

these actions because receiving a "negative performance review and being placed on a performance improvement plan, without more, is not an adverse employment action."  Id.

Defendant also relies on Turner v. Gonzales, where the Court of Appeals for the Eighth Circuit concluded that "[a] poor performance rating does not in itself constitute an adverse employment action because it has no tangible effect upon the recipient's employment."  421 F.3d 688, 696 (8th Cir. 2005) (internal citation omitted).  In Turner, the plaintiff had received a negative performance rating which she claimed resulted in a number of detrimental employment consequences.  Id.  The Eighth Circuit found that the plaintiff's resulting ineligibility for an automatic salary increase, in contrast with a discretionary increase, qualified her negative performance rating as an adverse employment action.  Id.

Plaintiff argues that she has sufficiently alleged that she suffered from adverse employment actions because she claims that the negative performance reviews and placement on a performance improvement plan directly caused her to lose an automatic annual raise and an automatic annual bonus.  Dkt. No. 13 at ECF p. 9, citing Dkt. No. 7 at ¶ 73.  She argues that the cases defendant cites support her argument because she alleges more than the existence of negative reviews; she alleges that the reviews detrimentally impacted the terms and conditions of her employment through lost compensation.  Dkt. No. 13 at ECF p. 9-10, citing Turner, 421 F.3d at 696 (noting that a poor evaluation "is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment.").  I agree that plaintiff has sufficiently alleged that her performance evaluations and placement on a performance improvement plan resulted in an automatic loss of compensation and they may therefore constitute adverse employment actions at this stage.

### C.    Discriminatory Motive

Finally, defendant contends that any adverse employment action plaintiff may have suffered did not occur under circumstances that give rise to an inference of discrimination.

### 1.    Title VII

With respect to plaintiff's Title VII claim, defendant argues that plaintiff's complaint fails to allege that any comparators were treated differently in the evaluation process or that any derogatory comments based on sex could be attributed to plaintiff's supervisors.  Dkt. No. 11 at ECF p. 6.  Plaintiff argues that she has laid out extensive allegations linking her negative reviews and placement on a performance improvement plan with her employer's intent to discriminate against her because of her sex.  Dkt. No. 13 at ECF p. 11.

Plaintiff only makes a few allegations that directly address sex-based discriminatory motive and which are within Title VII's statute of limitations.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges" but may be used as "background . . . in support of a timely claim").  Plaintiff contends that her current and former supervisors only had three women directly reporting to them.  Dkt. No. 7 at ¶¶ 23, 27.  Plaintiff alleges that in 2011 defendant redistributed her direct reports to "other employees who were male, younger and/or not disabled."  Id. at ¶ 30.  Plaintiff contends that during a recruiting effort in December 2014, "defendant" made a comment that two "younger male candidates were just the type of candidates [d]efendant was looking for" and "acknowledg[ed] that there is an underrepresentation of females at" the company.  Id. at ¶ 75.  Finally, plaintiff maintains that "[t]here is an underrepresentation of female employees in upper-level management positions" at

8

the company.[4]  Id. at ¶ 86.

An inference of discrimination can be "supported in a number of ways, including, but not limited to, comparator evidence, evidence of similar . . . discrimination of other employees, or direct evidence of discrimination from statements or actions by her supervisors suggesting . . . animus." Golod v. Bank of Am. Corp., 403 F. App'x 699, 703 n.2 (3d Cir. 2010).  It is unclear how any of the allegations plaintiff makes regarding sex-based discrimination over the course of several years connect to the negative reviews she alleges she received or the performance improvement plan.  Plaintiff provides no concrete factual allegations of comparators who were treated differently through negative performance reviews or placement on a performance improvement plan.[5]  See Dkt. No. 14 at ECF p. 3.  None of plaintiff's allegations create a "causal nexus between [her] membership in a protected class" and the adverse employment actions she alleges.  See Sarullo v. U.S. Postal Serv., 352 F.3d 789, 798 (3d Cir. 2003).  Thus, I will dismiss plaintiff's Title VII disparate treatment claim with leave to amend if she can allege sufficient facts upon which to state a claim.[6]

### 2.     ADEA

Defendant argues that plaintiff's ADEA disparate treatment claim also cannot withstand dismissal because plaintiff does not sufficiently allege circumstances suggesting that any adverse action taken against her was a result of age-based discriminatory motive.  Dkt. No. 11 at ECF

---

[4]     Additionally, as background, plaintiff alleges that sometime around September 2013, two positions for which she had applied were given to "younger, non-disabled males, with less years of experience than [p]laintiff." Dkt. No. 7 at ¶¶ 49, 52.  She also contends that she was demoted in 2012 and that her responsibilities were given to a non-disabled male. Id. at ¶¶ 32, 34, 91.

[5]     Plaintiff only includes one vague allegation that "male . . . employees who performed their job duties adequately were not . . . issued unsubstantiated negative performance reviews . . . and/or issued an unfounded [performance improvement plan]." Dkt. No. 7 at ¶ 82.

[6]     Courts "should freely grant leave" to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a).

p. 6.  Plaintiff responds that her allegations suffice to raise an inference of discrimination.  Dkt. No. 13 at ECF p. 11.

Plaintiff alleges that she is the oldest employee who directly reports to both her current and previous supervisor.  Dkt. No. 7 at ¶¶ 22-27.  She alleges that in 2011, defendant redistributed her direct reports to "other employees who were male, younger and/or not disabled."  Id. at ¶ 30.  She claims that in June 2013, thirteen employees over the age of fifty were terminated by defendant or voluntarily left the company.  Id. at ¶ 39.  When plaintiff then applied for an open position, she was allegedly rejected and told that her "experience [was] outdated," which she understood to be a reference to her age.  Id. at ¶¶ 50-51.  Plaintiff contends that in November 2013, defendant "attempted to persuade [her] to withdraw her pending application for" an open position, telling her that defendant wanted "to get some new folks in." Id. at ¶¶ 55-56.  Plaintiff was then hired for this position.  Id. at ¶ 58.  Plaintiff also alleges that "[t]here is an underrepresentation of older employees in upper-level management positions at" the company.  Id. at ¶ 87.

Finally, plaintiff claims that defendant made numerous disparaging age-related statements in or after 2011, including asking her, "aren't you going to retire soon?" and telling her to "keep her head down or consider retiring."  Id. at ¶ 74.  Plaintiff alleges that defendant told her during a December 2014 recruitment process "that there was probably only one viable candidate because the others [were] over fifty and too old."  Id. at ¶ 75.  Plaintiff was allegedly "told by other employees of [d]efendant that [d]efendant targets older workers for termination." Id. at ¶ 78.  Finally, without providing further factual allegations, plaintiff claims that "other younger . . . employees who performed their job duties adequately were not . . . provided with unfounded performance criticism[,] issued unsubstantiated negative performance

reviews . . . and/or issued an unfounded [performance improvement plan]."  Id. at ¶ 82.

As with plaintiff's sex discrimination claim, she does not allege in more than a conclusory way that she was treated less favorably than a sufficiently younger person under similar circumstances when she received negative performance evaluations or was placed on a performance improvement plan.  See Trelenberg v. 21st Century Ins. & Fin. Servs., Inc., No. 12-3603, 2013 WL 3914468, at *13 (E.D. Pa. July 30, 2013) (dismissing an ADEA disparate treatment claim because the plaintiff's allegations of derogatory age-related comments and being the only person over fifty years of age in her department were insufficient to permit the Court to infer age-based discrimination without factual allegations of the plaintiff's replacement by a younger employee after her termination); Palazzolo v. Damsker, No. 10-7430, 2011 WL 2601536, at *8 (E.D. Pa. June 30, 2011) ("[A]bsent from the pleaded facts is an allegation that the Plaintiff was replaced by a sufficiently younger individual."); Pina v. Henkel Corp., No. 07-4048, 2008 WL 819901, at *4 (E.D. Pa. Mar. 26, 2008) (dismissing an ADEA claim where the plaintiff failed to connect his termination to any age-based discriminatory motive by his employer because he did not allege that a sufficiently younger individual replaced him). Plaintiff's other allegations of her workplace conditions are insufficient to support her disparate treatment claim because they do not show a causal connection between her age and any adverse action taken against her.  See Sarullo, 352 F.3d at 798 (concluding that even without a comparator, a plaintiff bringing Title VII and ADEA claims needed "some causal nexus between his membership in a protected class" and the adverse employment action taken against him). Thus, I will dismiss her ADEA disparate treatment claim with leave to amend if she can allege facts sufficient to state a claim against defendant.

3.      **ADA**

Defendant attacks plaintiff's ADA claim on the same grounds as her other disparate treatment claims, arguing that she fails to allege circumstances that create an inference of discriminatory motive behind any adverse employment action.  <u>See</u> Dkt. No. 11 at ECF p. 6. Plaintiff bases her ADA disparate treatment claim on a number of allegations about disparaging comments in the workplace about people with disabilities, comments made to her directly about her health and the representation of people with disabilities in her workplace.

Plaintiff alleges that she is the only one of ten employees reporting to her supervisor who has a disability.  Dkt. No. 7 at ¶ 22.  She claims that this was also true with her previous supervisor.  <u>Id.</u> at ¶ 26.  Plaintiff again alleges that in 2011, defendant redistributed her direct reports to "other employees who were male, younger and/or not disabled."  <u>Id.</u> at ¶ 30.  She contends that she was demoted in 2012 and that her responsibilities were given to a non-disabled male.  <u>Id.</u> at ¶¶ 32, 34, 91.

Plaintiff alleges that four days before she was supposed to take medical leave for a surgery in June 2012, defendant told her "that it was eliminating her position as a result of alleged organizational changes" and that any other open positions in which she might be placed "would be demotions."  <u>Id.</u> at ¶ 38.  While out on medical leave in August 2013, defendant allegedly informed plaintiff "that upon her return to work, she would be demoted, and would sustain a pay decrease and reduction in job grade."  <u>Id.</u> at ¶ 42.  Plaintiff then applied for several open positions.  <u>Id.</u> at ¶ 43.

Plaintiff claims that she was ultimately rejected for one position after being told that she would be "too big of a risk" because defendant was "concerned about whether [p]laintiff could perform the duties of the job" given "the condition of her knees."  <u>Id.</u> at ¶¶ 45-46.  These

positions allegedly went to two "younger, non-disabled males, with less years of experience than [p]laintiff." Id. at ¶ 49.  Plaintiff was ultimately not demoted and was offered a new position at her grade level, which she accepted.  Id. at ¶¶ 53, 58.  Plaintiff claims that "other . . . non-disabled employees who performed their job duties adequately were not . . . provided with unfounded performance criticism[,] issued unsubstantiated negative performance reviews . . . and/or issued an unfounded [performance improvement plan]."  Id. at ¶ 82.

Plaintiff also alleges that sometime after 2011, "defendant" told her that it "didn't think she would be back after her medical operation."  Id. at ¶ 74.  Plaintiff contends that she has heard managers, including her own direct supervisors, "make comments ridiculing employees with disabilities."  Id. at ¶ 76.  Plaintiff alleges that other employees have also told her that "managers of [d]efendant ridicule employees with disabilities."  Id. at ¶ 77.

As with plaintiff's other disparate treatment claims, plaintiff's background allegations about her workplace environment do not connect to her allegations about her negative performance evaluations or placement on the performance improvement plan.  Although plaintiff need not prove her prima facie case at this stage, she has not sufficiently alleged that she suffered adverse employment actions "because of" her disability.  See Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993) ("Whatever the employer's decisionmaking process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome.").  Because plaintiff has failed to adequately plead a causal nexus between any adverse action taken against her and her disability, I will dismiss her ADA disparate treatment claim with leave to amend.

II.     **Hostile Work Environment**[7]

Plaintiff brings hostile work environment claims against defendant under Title VII, the ADEA and the ADA.[8]  Defendant argues that some of plaintiff's allegations are not actionable because they constitute discrete acts of discrimination which are time-barred.  Dkt. No. 11 at ECF p. 8.  Defendant contends that plaintiff's remaining allegations of workplace harassment are not sufficiently severe or pervasive to state a claim.  Id. at ECF p. 8-10.

To state a hostile work environment claim, a plaintiff must allege that: "[she] suffered intentional discrimination because of [her protected status], 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability."  Mandel v. M & Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013).[9]

Defendant maintains that "[s]everal of the acts that form [p]laintiff's hostile work

---

[7]     In its brief, defendant argues that plaintiff's "pattern and practice" claim must be dismissed.  Dkt. No. 11 at ECF p. 10-11.  Plaintiff "is not asserting a pattern and practice claim in this action."  Dkt. No. 13 at ECF p. 23.  Rather, plaintiff's allegations of "[d]efendant's pattern and practice of discrimination [are] submitted as . . . further [support] of gender- and age-based bias, in support of [p]laintiff's claims of disparate treatment and hostile work environment."  Id.

[8]     The Court of Appeals has assumed, without deciding, that the ADEA and ADA allow causes of action for a hostile work environment and that such claims are analyzed under the same framework as Title VII hostile work environment claims.  Slater v. Susquehanna Cnty., 465 F. App'x 132, 138 (3d Cir. 2012); Walton v. Mental Health Ass'n. of Se. Pa., 168 F.3d 661, 666-67 (3d Cir. 1999).

[9]     The elements of a hostile work environment claim under the ADEA and ADA are functionally equivalent for the purpose of defendant's challenge to plaintiff's claims.  See Ullrich v. U.S. Sec'y of Veterans Affairs, 457 F. App'x 132, 140 n.6 (3d Cir. 2012) (noting that an ADEA hostile work environment claim has "similar requirements" to a hostile work environment claim under Title VII); Walton, 168 F.3d at 667 (explaining that a plaintiff pursuing a hostile work environment ADA claim must allege that "(1) [she] is a qualified individual with a disability under the ADA; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and (5) that [her employer] knew or should have known of the harassment and failed to take prompt effective remedial action").

environment claims are actually . . . discrete acts of discrimination" that occurred outside of the 300-day window for filing with the EEOC and, as a result, are no longer actionable.  Dkt. No. 11 at ECF p. 8.  Plaintiff counters that she alleges a "continuing and ongoing pattern of various related discriminatory actions, including acts that occurred both within and outside of the 300-day filing window."  Dkt. No. 13 at ECF p. 15.

The Supreme Court has held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).  Recovery is therefore precluded "for discrete acts of discrimination . . . that occur outside the statutory time period."  Id. at 105.  However, prior discrete discriminatory acts may be used as "background . . . in support of a timely claim."  Id. at 113.  Discrete discriminatory acts include "termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training [and] wrongful accusation."  O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006).

In contrast to discrete discriminatory acts, the acts that form a hostile work environment claim are "different in kind" because "[t]heir very nature involves repeated conduct."  Morgan, 536 U.S. at 115.  Thus, a hostile work environment claim "will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."  Id. at 122.  "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."  Id. at 117.  Courts may therefore examine "the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period . . . so long as an act contributing to that hostile environment takes place within the statutory time period."  Id. at 105.

"[D]iscriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim; such acts 'can occur at any time as long as they are linked in a pattern of actions which continues into the applicable limitations period.'" Mandel, 706 F.3d at 166, quoting O'Connor, 440 F.3d at 127.  The Court of Appeals has explained that a plaintiff can allege a hostile work environment claim under a continuing violation theory if "all acts which constitute the claim are part of the same unlawful employment practice and . . . at least one act falls within the applicable limitations period."  Mandel, 706 F.3d at 165-66.

Defendant argues that any discrete discriminatory acts in plaintiff's allegations "should be disregarded in considering the validity of [p]laintiff's hostile work environment claim, as [p]laintiff was aware when they occurred and could have raised a claim at that time."  Dkt. No. 11 at ECF p. 8.  Plaintiff argues that her allegations constitute continuing conduct and that the harassment she faced falls under the continuing violation doctrine.  Dkt. No. 13 at ECF p. 16.

Plaintiff alleges numerous discrete discriminatory acts that occurred before the 300-day EEOC filing window, including a demotion and defendant's failure to promote her.  See Dkt. No. 7 at ¶¶ 34, 48-49.  Plaintiff also alleges numerous discrete discriminatory acts within the 300-day filing window; acts which she characterizes as the basis for her disparate treatment claims and are "different in kind" from the repeated acts that constitute continuing violations under a hostile work environment theory.  These discrete discriminatory acts cannot be aggregated to form the basis of plaintiff's hostile work environment claim.  See O'Connor, 440 F.3d at 127 ("Morgan established a bright-line distinction between discrete acts, which are individually actionable, and acts which are not individually actionable but may be aggregated to make out a hostile work environment claim.").

However, plaintiff does allege certain acts that are timely and may be aggregated with

16

past conduct, such as allegedly discriminatory comments based on sex and age. See Dkt. No. 7 at ¶¶ 74-75, 78 (claiming that defendant made statements during a recruitment process for several positions in December 2014 that two "younger guys" were "just the type of candidates [d]efendant was looking for" and that there was "only one viable candidate because the others [were] over fifty and too old"). It is less clear whether any of plaintiff's allegations based on her disability fall within the 300-day window. Plaintiff contends that sometime after 2011, "defendant" told plaintiff that it "didn't think she would be back after her medical operation." Id. at ¶ 74. Plaintiff alleges that she returned from two medical leaves related to a surgery in January 2013 and again in October 2013, before the beginning of the 300-day period before she filed with the EEOC. Id. at ¶¶ 36, 53. No other allegations clarify whether this statement was timely made in order to anchor her claim.[10] Additionally, plaintiff alleges that she has heard managers "ridiculing employees with disabilities" but similarly does not state whether any of these comments occurred within the appropriate 300-day window. Id. at ¶ 77. Thus, I must dismiss plaintiff's claim for hostile work environment based on her disability, but I will grant her leave to amend if she can allege sufficient facts upon which she can plead a timely claim under a continuing violation theory.

Even though plaintiff's allegations with respect to her Title VII and ADEA claims may be aggregated to allege a hostile work environment, I must consider defendant's argument that they do not sufficiently plead an objectively "severe and pervasive" hostile work environment.[11]

---

[10]     Even if this statement were timely made, it is not clear that it would support an ADA hostile work environment claim.

[11]     Defendant cites numerous cases in which plaintiffs with hostile work environment claims lost at summary judgment. See, e.g., Woodard v. PHB Die Casting, 255 F. App'x 608, 609 (3d Cir. 2007); Stucke v. City of Phila., No. 12-6216, 2015 WL 2231849, at *7 (E.D. Pa. May 12, 2015). Defendant has filed a motion to dismiss, not a motion for summary judgment, and I must rely upon the appropriate standard of review in deciding this case.

Dkt. No. 11 at ECF p. 8; Dkt. No. 14 at ECF p. 3-5.  Plaintiff argues that she has met the

"minimal burden" required to survive defendant's motion on her hostile work environment

claims.  Dkt. No. 13 at ECF p. 18.

A hostile work environment is one that is "permeated with discriminatory intimidation,

ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the

victim's employment and create an abusive working environment."  Harris v. Forklift Sys., Inc.,

510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted).  Whether workplace

harassment is sufficiently severe or pervasive "can be determined only by looking at all the

circumstances."  Id. at 23.  Such circumstances can "include the frequency of the discriminatory

conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive

utterance; and whether it unreasonably interferes with an employee's work performance."  Id.

Discrimination in the form of a hostile work environment is only actionable when it is done

"because of" the plaintiff's membership in a protected class.  Andreoli v. Gates, 482 F.3d 641,

643 (3d Cir. 2007).

In total, plaintiff bases her Title VII hostile work environment claim on: the

underrepresentation of women employees working for defendant, the redistribution of her direct

reports to "other employees who were male, younger and/or not disabled" in 2011 and one

comment in 2014 during a recruiting effort where "defendant" allegedly stated that two "younger

male candidates were just the type of candidates [d]efendant was looking for — two younger

guys."[12]  Dkt. No. 7 at ¶¶ 23, 27, 30, 75, 86.  The underrepresentation of women in plaintiff's

workplace cannot be characterized as discriminatory conduct sufficient to constitute a hostile

---

[12]     Again, as background, plaintiff alleges that sometime around September 2013,
two positions for which she had applied were given to "younger, non-disabled males, with less
years of experience than [p]laintiff."  Dkt. No. 7 at ¶¶ 49, 52.

work environment.  Combining this alleged underrepresentation with the redistribution of

plaintiff's direct reports in 2011 and one comment about male new hires three years later does

not suffice to state a claim for a hostile work environment "because of" plaintiff's sex that is so

"severe or pervasive" that it altered the conditions of her employment.  I will dismiss plaintiff's

Title VII hostile work environment claim but grant her leave to amend if she can allege sufficient

facts upon which to state a claim.

Plaintiff's ADEA hostile work environment allegations are more substantial.  Plaintiff

alleges an underrepresentation of older employees working for defendant.  Dkt. No. 7 at ¶ 87.

She again alleges that in 2011, defendant redistributed her direct reports to "other employees

who were male, younger and/or not disabled."  Id. at ¶ 30.  Plaintiff alleges that she has been

"told by other employees of [d]efendant that [d]efendant targets older workers for termination";

in 2013 a group of thirteen employees over the age of fifty were terminated by defendant or

voluntarily left their jobs.  Id. at ¶¶ 39, 78.  Plaintiff alleges that she was rejected for an open

position for which she applied in 2013 and was told that her "experience [was] outdated."  Id. at

¶¶ 50-51.  Soon after that, defendant allegedly "attempted to persuade [her] to withdraw her

pending application for" an open position, telling her that defendant wanted "to get some new

folks in."  Id. at ¶¶ 55-56.  Plaintiff alleges that numerous other age-related discriminatory

comments were made in or after 2011 as well as a comment in December 2014 "that there was

probably only one viable candidate [during a recruitment process] because the others [were] over

fifty and too old."  Id. at ¶¶ 74-75.

Plaintiff has alleged more than isolated age-based incidents over the course of several

years.  Assuming plaintiff's allegations as true, it would be premature to dismiss plaintiff's

ADEA hostile work environment claim at this stage.  See Dunn v. Bucks Cnty. Cmty. Coll., No.

13-6726, 2014 WL 2158398, at *2 (E.D. Pa. May 22, 2014) (finding allegations of several discriminatory comments by the plaintiff's supervisor, "generally demeaning" treatment and unwarranted discipline over the course of three years sufficiently severe or pervasive to survive a motion to dismiss); Ingram v. Vanguard Grp., Inc., No. 14-3674, 2015 WL 4394274, at *20 (E.D. Pa. July 17, 2015) (finding that specific allegations of an employer's discriminatory comments paired with ignored complaints and unwarranted worsening performance reviews plausibly alleged conduct that was sufficiently severe or pervasive to survive a motion to dismiss); see also Grasty v. World Flavors, Inc., No. 11-1778, 2011 WL 3515864, at *10 n.2 (E.D. Pa. Aug. 11, 2011) (noting "a reluctance to dismiss a complaint at the 12(b)(6) stage when the primary challenge to the hostile work environment claim is whether or not the conduct in question is severe and/or pervasive").  Therefore, I will deny defendant's motion to dismiss plaintiff's ADEA hostile work environment claim.

## CONCLUSION

For the reasons stated above, I will grant defendant's motion to the extent that it seeks to dismiss plaintiff's claims for disparate treatment under Title VII, the ADEA and the ADA and her claims for hostile work environment under Title VII and the ADA.  I will deny defendant's motion to the extent that it seeks to dismiss plaintiff's ADEA hostile work environment claim. Plaintiff will be granted leave to amend all dismissed claims if she can plead sufficient facts upon which to do so.

An appropriate Order follows.